UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
LINDE, et al.,

          Plaintiffs,

  -against-

ARAB BANK, PLC,

          Defendant.
------------------------------------------------------------X
------------------------------------------------------------X
COULTER, et al.,

          Plaintiffs,

  -against-

ARAB BANK, PLC,

         Defendant.
------------------------------------------------------------X

**ATTORNEY AFFIRMATION**

Case No. 04-cv-2799 (BMC)(PK)

Case No. 05-cv-365 (BMC)(PK)

AARON SCHLANGER, an attorney duly admitted to practice law before the United States District Court for the Eastern District of New York, aware of the penalties of perjury, affirms as follows:

1. I am counsel at the law firm OSEN LLC, and as such am fully familiar with the facts and circumstances of the matter herein.

2. I submit this affirmation in support of the application of ▇▇▇▇▇, ▇▇▇▇▇ guardian of ▇▇▇▇▇ (the "Infant Child"), in connection with a request for an Order in Compromise of the Infant Child's cause of action against the Defendant, Arab Bank, plc ("Arab Bank").

3. ▇▇▇▇▇, ▇▇▇▇▇▇▇ guardian of the Infant Child, retained the law

firms of OSEN LLC, KOHN SWIFT & GRAF, P.C., ZUCKERMAN SPAEDER LLP and TURNER & ASSOCIATES, P.A. (the "Plaintiffs' Counsel") to represent ▇▇▇▇, in connection with claims arising from the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Plaintiffs' Counsel is not aware of any conflict of interest that would impair ▇▇▇▇ ability to properly assess the best interests of the child, including the child's best interests in connection with the settlement of this litigation.

## PROCEDURAL HISTORY OF THE LITIGATION

4. The details of Plaintiffs' claims are fully set forth in the operative complaints dated July 2, 2004 and January 21, 2005.

5. Plaintiffs in the *Linde* action filed their initial complaint on July 2, 2004 and filed an amended complaint on August 10, 2004. Defendant served its motion to dismiss the complaint on November 19, 2004. Plaintiffs served their opposition on December 14, 2004. Defendant served its reply on March 11, 2005.

6. Plaintiffs in the *Coulter* action filed their complaint on January 21, 2005. Defendant served its motion to dismiss the complaint on March 21, 2005. Plaintiffs served their opposition on April 4, 2005. Defendant served its reply on April 18, 2005.

7. On July 26, 2005, the Court held oral argument on Defendant's motion to dismiss, and on September 2, 2005, the Court issued its decision largely denying Defendant's motion.

8. Thereafter, discovery commenced both in the United States and overseas. Discovery was delayed by Defendant's invocation of foreign bank secrecy laws which the Magistrate Judge overruled by a November 25, 2006 Order that the District Judge affirmed on March 14, 2007.

9. Nevertheless, Defendant continued to invoke foreign bank secrecy laws.

10. On December 24, 2007, Plaintiffs moved for sanctions against Defendant for its continued invocation of its overruled foreign bank secrecy law objections. Defendant filed its opposition on February 6, 2008 and Plaintiffs filed their reply on February 19, 2008.

11. On June 1, 2009, the Magistrate Judge issued a Report and Recommendation imposing sanctions on Defendant for its continued invocation of foreign bank secrecy. The Magistrate Judge thereafter modified the Report and Recommendation on June 18, 2009.

12. On July 16, 2009, all parties filed objections to the Magistrate Judge's Order. The parties filed their oppositions on September 3, 2009.

13. On July 12, 2010, the District Court issued an Order imposing sanctions on Defendant for its continued invocation of foreign bank secrecy law objections to discovery.

14. On July 26, 2010, Defendant filed a motion seeking interlocutory appeal of the Court's July 12, 2010 sanctions order. Plaintiffs filed their opposition on August 2, 2010, and Defendant filed its reply on August 6, 2010. The parties simultaneously briefed Defendant's motion to reconsider.

15. On October 5, 2010, the District Court issued decisions denying (1) Defendant's motion to certify the sanctions decision for interlocutory appeal and (2) Defendant's motion for reconsideration.

16. On November 4, 2010, Defendant filed a Notice of Appeal with the U.S. Court of Appeals for the Second Circuit seeking to appeal the sanctions decision and simultaneously filed a Petition for a Writ of Mandamus seeking to vacate the sanctions decision. Briefing of Defendant's Appeal and Petition for Mandamus concluded on June 6, 2011.

17. The Second Circuit held oral argument on Defendant's Appeal and Mandamus

Petition on March 6, 2012 and dismissed Defendant's Appeal and denied its Petition for Mandamus by Order dated January 18, 2013.

18. Defendant thereafter filed a Petition for a Writ of Certiorari to the United States Supreme Court in June 2013. On June 30, 2014, the U.S. Supreme Court denied Defendant's Petition.

19. On August 8, 2012, following the conclusion of all discovery, Defendant served its motion for summary judgment. Plaintiffs served their opposition on September 7, 2012, and Defendant served its reply on September 21, 2012.

20. On April 24, 2013, the District Court held oral argument on Defendant's motion for summary judgment and, following oral argument, largely denied Defendant's motion.

21. On May 8, 2013, Defendant filed a motion to reconsider the denial of summary judgment or in the alternative to certify the decision for interlocutory appeal. Plaintiffs filed their opposition on May 22, 2013.

22. On June 18, 2013, the Court denied Defendant's motion to reconsider and its motion for certification of an interlocutory appeal.

23. Beginning on August 12, 2014, the Court conducted a trial on Arab Bank's liability solely with respect to Plaintiffs killed or injured in attacks allegedly carried out by Hamas.

24. Following a six-week jury trial, on September 22, 2014 the jury returned a verdict finding Arab Bank liable for all 24 attacks in question, which the jury determined had been carried out by Hamas.

25. On October 10, 2014, Defendant filed a motion seeking judgment as a matter of law and a motion seeking a new trial. On November 5, 2014, Defendant filed a motion seeking

certification of an interlocutory appeal. On November 24, 2014, Plaintiffs filed their consolidated opposition to Defendants' motions, and Defendant filed its consolidated reply on December 12, 2014.

26. On April 8, 2015, the District Court issued a decision granting in part, and denying in part, Defendant's motion for judgment as a matter of law, and denying Defendant's motion for a new trial and motion for certification of an interlocutory appeal.

27. During the pendency of the motions, Plaintiffs prepared for the first damages trial, which the Court scheduled for August 2015 to determine compensation for 17 plaintiffs selected by the Court ("Bellwether Trial Plaintiffs"). On the eve of trial, the parties agreed to postpone the trial in light of the fact that they had reached the framework to resolve the case.

28. On November 16, 2015, counsel executed a Master Settlement Agreement on behalf of all Plaintiffs, including the Infant Child. Thereafter, on November 23, 2015, ▬ ▬ approved the settlement on behalf of the Infant Child, ▬, subject to this Court's approval of the Infant Compromise.

29. On May 24, 2016, the Court So Ordered a Stipulation reached by the parties to enter final judgment pursuant to Rule 54(b) for 16 of the 17 Bellwether Trial Plaintiffs.

30. On June 22, 2016, in accordance with the terms of the Master Settlement Agreement, Defendant filed its Notice of Appeal of the judgment entered by the Court on May 24, 2016.

31. Under the terms of settlement, the precise amount of compensation paid by the Defendant will be determined by the outcome of the appeal before the Second Circuit.

## REASONABLENESS OF THE SETTLEMENT

32. Settlement of this litigation on behalf of the Infant Child in the amount of no less than ▇▇▇▇[1] was recommended by counsel as a fair and just amount when weighed against the risks and expense of delay resulting from what – absent settlement – would have been a protracted appellate process, and in light of the ▇▇▇▇ continued opportunity to recover for ▇ devastating loss from multiple other sources.

33. With respect to attorneys' fees in this matter, it is respectfully submitted to this Court that a fee equal to one-third **(1/3)** of the net sum recovered, after disbursements in this matter, is reasonable and appropriate in light of the risk, length and complexity of the litigation. Counsels' fees fall well within the range of fees typically paid by plaintiffs in personal injury litigation, even in cases involving far less risk and expense than this matter. Attorneys' fees are requested in the amount of ▇▇▇▇ together with reimbursement of the proportionate share of expenses totaling $31,126.15. The attorneys' fees requested herein reflect 1/3 of the net recovery - assuming the Court of Appeals reverses the final judgment from which the Appeal was taken and dismisses all Plaintiffs' claims (or issues an equivalent order remanding the case to this Court for the exclusive purpose of entering judgment in favor of the Bank and/or dismissing the Plaintiffs' claims in their entirety in accordance with their instructions). Exhibit A attached to this Affirmation lists the categories and applicable pro-rated share of expenses that counsel seek reimbursement for from the Infant Child.

---

[1] The exact amount of recovery by the *Linde* and *Coulter* Plaintiffs is dependent on the outcome of Arab Bank's appeal to the Second Circuit. Under the terms of the settlement, the Infant Child will receive no less than ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

34. If the Court of Appeals does <u>not</u> reverse the final judgment from which the Appeal was taken, then the Infant Child will receive at least one additional payment as set forth in Footnote 1 above and Plaintiffs' Counsel will seek additional attorneys' fees in the matter based on the terms set forth in Paragraph 33 above, for which Plaintiffs' Counsel will also seek approval in such event.

35. The distribution of attorneys' fees in this matter among all counsel is as follows:

- OSEN LLC
- KOHN SWIFT & GRAF, P.C.
- ZUCKERMAN SPAEDER LLP
- TURNER & ASSOCIATES, P.A.



36. Plaintiffs' Counsel jointly advanced the considerable costs associated with litigating the case, conducted an extensive pre-filing investigation, briefed and argued numerous motions (including addressing issues of first impression under the statute), interviewed clients concerning the basis for their claims, drafted and responded to discovery demands, obtained medical records and expert reports, attended various court appearances, conducted numerous fact and expert depositions, successfully defended Arab Bank's first appeal to the Second Circuit, and petition for a writ of Certiorari to the United States Supreme Court, successfully tried the first liability trial before a jury in 2014, negotiated a settlement with Defendant, and prepared the compromise papers herein.

37. All *Linde* and *Coulter* Plaintiffs, represented by the same Plaintiffs' Counsel, provided written settlement authority letters prior to the conclusion of the settlement with Arab Bank. The *Linde* and *Coulter* Plaintiffs were also provided with information indicating how injuries (including their own) were being evaluated for settlement purposes and were afforded an opportunity to comment on, or seek adjustment to, those valuations prior to providing settlement authority. Lastly, each *Linde* and *Coulter* Plaintiff was afforded an opportunity to review the

settlement amounts apportioned to every other *Linde* and *Coulter* Plaintiff prior to approving the settlement terms, and each Plaintiff spoke with counsel to discuss the settlement terms prior to approving the terms and had all of their questions, if any, answered.

38.     Considering the totality of the circumstances outlined above, Counsel believes that the proposed settlement is reasonable and fair to the Infant Child. Even without the possibility of the enhanced recovery resulting from a successful appeal or the recoveries potentially available from other defendants, the amount of the Infant Child's recovery falls well within the range of recoveries obtained by other plaintiffs in comparable personal injury matters, including cases involving far less risk than this highly complex matter. The amount to be paid to the Infant Child will be held in trust or held in an appropriate custodial account or accounts until ▮ reaches majority. After the payment of attorneys' fees and disbursements as outlined above, the net <u>minimum</u> amount payable to the Infant Child is ▮.

39.     ▮ and ▮ Infant Child continue to have active lawsuits based on the same terrorist attack pending in this district against ▮ ▮ ▮ ▮ that may also provide a means of further recovery.

40.     Counsel is not aware of any existing liens.

41.     Neither I, nor this firm, has pursued the settlement of this action, at the insistence, directly or indirectly, of the Defendant, its insurance carrier (if any), or any other party with interests adverse to those of the Infant Child herein. I have not received, nor am I to receive, any compensation directly or indirectly from the Defendant, its insurance carrier (if any), or any other party with interests adverse to those of the Infant Child herein (other than the attorneys' fees payable by the Infant Child).



42. No previous application for this or similar relief has been made.

WHEREFORE, it is respectfully requested that the Court, pursuant to Local Civil Rule 83.2(a), recognize ▮ as legal guardian for the Infant Child, ▮, and authorize ▮ as legal guardian to settle and compromise the claims of the Infant Child, voluntarily dismiss the Infant Child's cause of action against Arab Bank in all respects upon the disposition of Arab Bank's appeal to the Second Circuit Court of Appeals, compliance by Arab Bank with the terms of settlement and the filing of said motion to dismiss by the parties, and approve the financial terms of the settlement on behalf of the Infant Child that was entered into by the parties.

Dated: November 18, 2016
Hackensack, New Jersey

*Aaron Schlanger*
Aaron Schlanger, Esq.
OSEN LLC

# Exhibit A

Case 1:05-cv-00365-BMC-PK   Document 1250-2   Filed 11/18/16   Page 10 of 12 PageID #: 86249

CASE EXPENSES – INFANT COMPROMISE

# *Linde v. Arab Bank, plc*
## Disbursement Journal
### Minor Child: ▮

Litigation Expenses Advanced Between 2003-2016

| | |
|---|---:|
| **DEPOSITION COSTS** | 1,209.88 |
| (Court Reporters, Videographers, Transcripts) | |
| **VIDEO AND TELEPHONE CONFERENCES** | 139.30 |
| **DOCUMENT TRANSLATIONS (Outside services)** | 612.25 |
| **FILING FEES** | 27.97 |
| **LIABILITY TRIAL COSTS** | 2,429.45 |
|     Expert Travel Expenses | |
|     Hebrew Language Interpreters for Trial | |
|     Trial Graphics and Courtroom IT | |
|     Check-Translator (Arabic) | |
| **PROFESSIONAL SERVICES** | 280.12 |
| ▮ | |
| ▮ | |
| ▮ | |
| ▮ | 1,308.52 |
| **EXPERT WITNESSES** | 3,257.37 |
| ▮ | 1,551.33 |

Page | 1

| CASE EXPENSES – INFANT COMPROMISE | |
| --- | ---: |
| ▬ | 14,327.48 |
| ▬ | 939.81 |
| **DOCUMENT PRODUCTION** | 407.36 |
| **TRAVEL BY COUNSEL & WITNESSES** | |
|    International | 1,151.15 |
|    Domestic | 2,129.75 |
| **CASE MANAGEMENT EXPENSES** <br> (Express Mail, Couriers, Postage, Transcripts, Hard drives, Case Management Software Licenses) | 377.26 |
| ▬ | 82.86 |
| ▬ | 894.29 |
| **TOTALS** | 31,126.15 |